# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JASMINE GUY JORDAN,

        Plaintiff,

v.                                Case No. 11-cv-10153

CITY OF DETROIT, et al.,

        Defendants.

_____/

**OPINION AND ORDER (1) DENYING DEFENDANT WAYNE COUNTY'S MOTION
TO STRIKE, (2) GRANTING DEFENDANT WAYNE COUNTY'S MOTION FOR
SUMMARY JUDGMENT, (3) DIRECTING PLAINTIFF TO SHOW CAUSE,
(4) DENYING PENDING DISCOVERY MOTIONS, AND (5) SUSPENDING
DEADLINES IN AUGUST 15, 2011 SCHEDULING ORDER**

Plaintiff Jasmine Guy Jordan was identified at the scene of a fatal robbery,

charged with murder, and bound over to stand trial. Later, the case was dismissed

without prejudice when the principal eyewitness did not appear at trial. Plaintiff here

claims malicious prosecution and associated violations of his civil rights, saying that the

various investigating officers and county prosecutors "knew" he was not the assailant.

Before the court is Defendant Wayne County's motion for summary judgment

and discovery motions filed by Plaintiff and Defendant Wayne County which the court

has previously held in abeyance. Without leave of court or a stipulation from Defendant

Wayne County, on June 4, 2012—approximately three weeks after it was due under the

Local Rules—Plaintiff filed his response to the motion for summary judgment.[1]  Oral

---

[1]On the day of the motion hearing, Defendant Wayne County filed a motion to
strike Plaintiff's untimely response brief.  The court informed counsel that it had
reviewed the motion and acknowledged the untimely nature of Plaintiff's brief.  It
nevertheless indicated that it would permit Plaintiff to defend against the motion to

argument occurred on June 20, 2012.  For the reasons set forth below, the court will grant Defendant Wayne County's motion for summary judgment and deny the pending discovery motions.  The court will further direct Plaintiff to show cause why summary judgment should not be granted in favor of Defendant Wayne County on the 42 U.S.C. § 1985 claim and in favor of Defendants John Does I and II on the malicious prosecution claim asserted against them, and suspend the scheduling order deadlines pending further order of the court.

## I.  BACKGROUND

On October 30, 2007, Donn Richardson was shot and killed while being robbed. (Mack Arrest Report, Dkt. # 71-2.)  Linda Milliner, Richardson's fiancée, witnessed the robbery and described the shooter to the responding Detroit Police Department officers as a nineteen-year-old black male wearing a grey sweat jacket and hat, standing five feet eight or nine inches tall, and having light skin complexion and short hair.  (Milliner's Witness Statement 3, Dkt. # 71-3.)[2]  Milliner further stated that two other men participated in the robbery, but she was unable to provide a description beyond identifying them as "young black guys."  (*Id.*)  Shortly after the shooting, Detroit police officers saw Plaintiff, then seventeen years old,[3] and his twenty-one-year-old brother,

dismiss and would accept Plaintiff's brief.  Accordingly, the motion to strike will be denied.

[2] The Witness Statement appears to have been completed some hours after the shooting, filled out by an officer in a question-and-answer format. The signature of the witness, in what appears to be a different hand, is near the bottom of the second page next to an "X".

[3] Defendant Wayne County states that Plaintiff's age at the time of his arrest and detention has not been established because several dates of birth appear in police records and Plaintiff has neither produced a government-issued identification nor birth certificate and has not signed and attested to his responses to interrogatories.  (Def.

Cornell Massey, walking near the scene of the shooting. (Cross-Nelson Arrest Report, Dkt. # 71-5.) The officers stopped Plaintiff and Massey based on their observations that both individuals "had youthful appearance[s]" and that Plaintiff specifically fit the description of the possible shooter. Among other things, he was wearing grey. (Mack Arrest Report, Dkt. # 71-2.) Officers released Massey after confirming his identity and confiscating a shotgun shell in his possession, but detained Plaintiff on a curfew violation and transported him to the scene of the shooting. (*Id.*) While Plaintiff was restrained in the backseat of the police car, Milliner was able to see Plaintiff through the police car's window and positively identified him as the shooter.[4] (*Id.*) Additional details surrounding Milliner's identification of Plaintiff were revealed during Plaintiff's preliminary examination in the 36th District Court for the City of Detroit. Milliner testified that an officer pointed at Plaintiff and asked whether the individual in the car was "the man that killed your husband." (Preliminary Examination Tr. 33-34, Dkt. # 71-4.) Milliner recalled responding "yes, it is." (*Id.*) After Milliner's positive identification of Plaintiff, he was arrested, and subsequently was charged by the prosecuting attorney with first-degree murder, felony murder, and possession of a firearm while committing or attempting to commit a felony. (Felony Warrant, Dkt. # 71-18.)

---

Wayne Cnty.'s Br. Supp. Mot. Summ. J. 5, Dkt. # 68.) Defendant Wayne County nevertheless assumes for the purposes of summary judgment that Plaintiff was seventeen during the relevant period of time. The court will do the same.

[4] The report suggests that Milliner was rather forceful upon seeing Plaintiff in the back of the patrol car: "Abv [above] Witness obv [observed] the suspect in the rear of E-30 scout car and stated to wrt [writer] *that is him 100 percent he had the gun* and yelled at me to get out of the window." (Mack Arrest Report (emphasis added).)

Following Plaintiff's arrest, police officers arrested Massey at Plaintiff and Massey's shared residence and secured a search warrant for the property. (Cross-Nelson Arrest Report; Request for Search Warrant, Dkt. # 71-12.) Police recovered a shotgun, 9mm ammunition, and a single .22 caliber bullet. (Cross-Nelson Arrest Report.) Defendant Wayne County has not contested Plaintiff's contention that none of the evidence found during the search implicated Plaintiff in the shooting of Richardson.

A preliminary examination was held on November 20, 2007. (Prelim. Exam. Tr., Nov. 20, 2007, Dkt. # 59-2.) Aside from stipulations (i.e., the autopsy report stated that the cause of death was homicide; the victim's body was positively identified by his son), the only evidence presented during the preliminary examination was through the testimony of Milliner. She testified that on the night of Richardson's death, she heard a neighborhood dog barking in a distinctive way and went to the window to investigate. (*Id.* at 11:6-21.) Once at the window, Milliner observed three men approach Richardson and heard one of them yell "give me your money, motherfucker, give me your money." (*Id.* at 13:7-11.) Milliner indicated that the man demanding Richardson's money was armed with a gun. (*Id.* at 13:13-16.) At some point during the confrontation, the individual with the gun apparently became aware of her watching from the window; Milliner recalled that the gunman said to Richardson, "[t]ell you [sic] bitch to get out the window [']fore I shoot her." (*Id.* at 16:15-18.) Milliner moved away from the window and began putting her shoes on, at which point she heard a gun shot and returned to the window and heard Richardson say that he was shot. (*Id.* at 17:22-18:2.) Milliner unequivocally identified Plaintiff in court as the man who held the gun, demanded Richardson's money, and threatened her. (*Id.* at 15:14-16:2.) During a contentious

4

cross examination, Plaintiff's defense attorney was able to elicit from Milliner the circumstances surrounding her identification of Plaintiff as the shooter at the scene of the crime.[5]  Milliner stated that the police "asked me to walk over to the car—I could see him and he can't see me, and then [the police officer] pointed to [Plaintiff] and said is this the man that killed your husband and I said yes, it is and that was it." (*Id.* at 33:17-23.)  The judge, citing Milliner's sworn testimony, found probable cause existed to hold Plaintiff criminally liable for the homicide of Richardson and bound Plaintiff over.  (*Id.* at 38:11-25.)  On February 25, 2008, the state court granted the prosecutor's motion to dismiss the charges against Plaintiff without prejudice because Milliner failed to appear at trial.  (Order of Dismissal, Dkt. # 71-21.)

Although not fully supported by the factual record, Plaintiff and Defendant Wayne County appear to agree that Plaintiff was housed with adult prisoners during his four-month detention at the Wayne County Jail while the felony charges were pending against him.  (*See* First Amend. Compl. ¶ 26, Dkt. # 41.)  Plaintiff also alleges, without providing any evidentiary support, that during his detention he was subjected to threats of physical harm by other inmates, verbally abused by jail officials, and attacked by inmates on at least two occasions in February 2008.  (*Id.* ¶¶ 27-28.)

Plaintiff initiated this lawsuit on January 20, 2011, and filed a first-amended complaint on September 27 2011, asserting three claims under 42 U.S.C. § 1983 and

---

[5] "Contentious," as used in describing the exchanges here, includes Milliner raising her voice more than once to complain about the manner of being questioned, and defense counsel mocking Milliner's manner of answering.  For example, when Milliner was asked to describe the assailant, she apparently indicated Plaintiff, saying "that's him right there."  Defense counsel responded, "[t]hat's great.  How tall is him right there?"  (Prelim. Exam. Tr. 26:7-10.)

one under 42 U.S.C. § 1985. Only Counts I, III, and IV implicate Defendant Wayne County. Count I, a § 1983 malicious prosecution claim, alleges that Defendant Wayne County—and others including John Doe I and John Doe II—detained and prosecuted Plaintiff in the absence of probable cause in violation of the Fourth Amendment.[6] (*Id.* ¶¶ 38-39.) In Count III, Plaintiff alleges that his detention in the adult population at the Wayne County Jail constituted deliberate indifference to his safety in violation of his right to due process of law under the Fourteenth Amendment and was a result of Defendant Wayne County's systematic failure to enforce its jail policies. (*Id.* ¶¶ 54-59.) Finally, Count IV alleges a § 1985 conspiracy on the part of City of Detroit, Wayne County, and the various officers named as Defendants involved in his arrest to deprive him of his constitutional rights.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its

---

[6]The complaint erroneously alleges that his detention and prosecution without probable cause violated Plaintiff's "right of due process guaranteed by the Fourth Amendment." (First Amend. Compl. ¶ 40.) The right to due process of law is guaranteed by the Fifth and Fourteenth Amendments, not the Fourth Amendment. U.S. Const. amend. V, XIV, § 1. The Fourth Amendment protects citizens against unreasonable searches and seizures. *Id.* at amend. IV. Based on the nature of Plaintiff's allegations, the court interprets his malicious prosecution claim as a Fourth Amendment claim that he was unreasonably seized and prosecuted without probable cause.

burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The mere existence of some factual dispute does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a

verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)).  A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## III.  DISCUSSION

### A.  Pending Discovery Motions

On March 14, 2012, two days before the expiration of the court-supervised discovery deadline, Plaintiff filed a motion for a protective order and to compel discovery, alleging, *inter alia*, that Defendant Wayne County had repeatedly failed to meet its discovery responsibilities in this case.  In April 2012, approximately four weeks after discovery closed, Defendant Wayne County responded in kind by filing two discovery motions of its own that alleged similar discovery violations.  As the court observed in its April 13, 2012 on-the-record telephonic conference with counsel, many of the complained of violations occurred before and during December 2011 and could have been resolved with a telephone conference with the court many months before the close of discovery.  Yet, the parties' briefs reveal that both counsel allowed the discovery issues to fester, waiting to raise them with each other until March 2011, a few days before the discovery deadline was to arrive.[7]  During the same conference, the

---

[7]On December 15, 2012, an earlier discovery dispute was resolved between the parties with the entry of a stipulated order directing Defendant Wayne County to produce various outstanding discovery requests within ten days of the entry of the order.  (12/15/2012 Order, Dkt. # 52.)  Over the course of the next three months, neither party filed a motion to compel discovery nor contacted the court to seek its assistance in any other discovery matters.  The parties were quiet as mice.  In spite of the December 2012 order, which placed a ten-day deadline on the production of outstanding discovery

court stated its inclination to wait until Defendant Wayne County's anticipated dispositive motion was fully briefed, holding the discovery motions in abeyance and considering only later whether there would be any real need to adjudicate them.  Anticipating Plaintiff's response to the motion for summary judgment, the court advised that "we shall simply see . . . whether there's any credible allegation that there's a need for supplementary discovery or rounding out any information.  It may happen, it may not.  It all depends upon the way the motion is formulated and the manner in which Mr. Martin, under the rules, chooses to respond." (Status Conference Tr. 20:9-15, Dkt. # 70.) Counsel substantially agreed with the proposed course of action, and the court entered an order on April 17, 2012, holding the motions in abeyance.  (4/17/2012 Order, Dkt. # 67.)

Having now reviewed Defendant Wayne County's motion for summary judgment and Plaintiff's response, the court concludes that resolution of the discovery motions is not needed to produce a fair and complete adjudication of the motion.  Plaintiff does not argue in his response any particularized need for additional discovery.  Also, as is discussed in greater detail below, Defendant Wayne County is entitled to summary judgment on Plaintiff's three claims because Plaintiff is barred by collateral estoppel from asserting the malicious prosecution claim and has failed to plead sufficient factual

---

requests, Plaintiff's counsel, who now argues that the December 2012 order was not fully satisfied, did not contact Defendant Wayne County's counsel to inform her that discovery requests were still outstanding until March 6, 2012.  (*See* Pl.'s Mot. Protective Order ¶ 15, Dkt. # 54.)  Nor did he file a motion with this court until the eve of the discovery deadline.  The lack of diligence on the part of counsel for both parties during the discovery period certainly makes the requests for sanctions and protective orders less persuasive than they would have been if the issues had been timely brought to the court's attention.

allegations to establish a right to relief on the claim, and has not proffered evidence, which, if it existed would be in his possession, to establish a genuine issue of material fact for trial on the substantive due process claim. The documents sought in Plaintiff's discovery motion, even if they were to provide evidence favorable to his case, would not cure the deficiencies in his claims against Defendant Wayne County. Plaintiff's motion for a protective order and to compel discovery and Defendant Wayne County's motion for a protective order will therefore be denied as moot.

Plaintiff's request for attorney's fees and costs incurred in prosecuting his discovery motion and Defendant Wayne County's motion for the imposition of sanctions will also be denied. To the extent that discovery failures occurred in this case, the record reflects that both parties have fallen short of the discovery standards established in the Federal Rules of Civil Procedure and the Local Rules. Accordingly, both parties should bear the costs associated with their respective discovery shortcomings, and neither party is entitled to an award of attorney's fees or costs.

## B.  Malicious Prosecution Claim

Defendant Wayne County argues that Plaintiff is precluded from asserting a Fourth Amendment malicious prosecution claim because the issue of probable cause was litigated during a preliminary examination before a state-court judge.[8]  Although the

---

[8]Plaintiff spends a considerable portion of his response brief arguing that Defendant Wayne County is barred from seeking summary judgment on the malicious prosecution claim because the court had adjudicated the issue of collateral estoppel in an earlier order. This argument is based on an mistaken interpretation of the court's September 21, 2011 order granting Plaintiff leave to file a first amended complaint. In that order, the court denied Defendant Wayne County's pending motion to dismiss as moot because it challenged the legal sufficiency of the original complaint, which was no longer the operative pleading after the court granted leave to amend. (9/21/2011 Order, Dkt. # 39.)

contours of such a claim are not clearly established, the Sixth Circuit has held on several occasions that, at the very least, an absence of probable cause to prosecute is required to maintain a constitutional malicious prosecution claim.  *See Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001).  However, collateral estoppel will often bar a plaintiff from asserting a malicious prosecution claim in a § 1983 action.  Generally, where a "state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987), *overruled on other grounds by Franz v. Village of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001).  *Coogan's* holding is not categorical; preclusion only applies when each element of collateral estoppel is present.  *Darrah,* 255 F.3d at 311.  The court must apply state law to determine whether collateral estoppel bars Plaintiff from asserting a malicious prosecution claim.  *Darrah*, 255 F.3d at 311.

> Under Michigan law, [collateral estoppel] applies when (1) there is identity of parties across the proceedings, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated and necessarily determined in the first proceeding, and (4) the party against whom the

---

Whether Plaintiff's malicious prosecution claim was or was not barred by collateral estoppel, was not decided, nor were any other purported merits of Defendant's motion.  The court noted that "in light of the overriding principle of freely granting leave to amend in order to try cases on their merits, Plaintiff's claim is not necessarily futile" and added that "Plaintiff's amended complaint could conceivably allege facts to support the general allegations of misrepresentations and omissions that led to the finding of probable cause."  (*Id.* at 3.)  Accordingly, the "law-of-the-case" doctrine does not prevent Defendant Wayne County from now seeking summary judgment on the malicious prosecution claim.

doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* (citing *People v. Gates*, 452 N.W.2d 627, 630-31 (1990)).  Here, only the "same issue" requirement is in dispute.

In *Darrah*, the Sixth Circuit found the "same issue" requirement absent because "the state court's determination of probable cause at the preliminary hearing [was] not identical to the issue [in the § 1983 claim], that being whether [the defendant] made materially false statements to the state judge that *formed the basis* of that court's probable cause determination."  *Id.* (emphasis added).  In other words, the plaintiff in *Darrah* "was . . . seeking to demonstrate that the officer *knowingly* misstated material facts in order *to establish* probable cause."  *Molnar v. Care House*, 359 F. App'x 623, 627 (6th Cir. 2009) (citing *Darrah*, 255 F.3d at 311).

Although Plaintiff here ostensibly asserts a claim similar to the one at issue in *Darrah*, there exists a fundamental distinction between the two: Plaintiff's malicious prosecution claim is simply to rehash the ultimate issue adjudicated in the preliminary examination, i.e., the existence of probable cause.  *Darrah's* claim centered not on the existence of probable cause but on the allegedly misstated material facts that formed the basis of the state court's probable cause determination.  *Darrah*, 255 F.3d at 311 ("In *Josey* [*v. Salisbury*, No. 92-2093, 1993 WL 476974 (6th Cir. Nov. 18, 1993)], as in this case, the plaintiffs based their malicious prosecution claim in federal court on the grounds that the defendant-officers had knowingly supplied the magistrate with false information in order to establish probable cause.")  Here, a review of the preliminary examination transcript in the underlying state prosecution reveals that the state court's probable cause and bind over determination was based solely on the testimony of the

eyewitness to the shooting, not on any statements made by the police officers and prosecutors.  (*See* Prelim. Exam. Tr. 38:13-25.)

*Molnar*, a more recent—albeit unpublished—Sixth Circuit case is strikingly similar to this case and crystalizes the critical difference between the malicious prosecution claim in *Darrah* and Plaintiff's claim here.  In *Molnar*, the plaintiff sought to avoid the preclusive effect of collateral estoppel by arguing that his malicious prosecution claim was not a relitigation of probable cause, but was based on a police officer's allegedly false statements to a magistrate and the officer's failure to disclose exculpatory evidence.  *Molnar*, 359 F. App'x at 627.  In distinguishing *Darrah* and finding collateral estoppel applicable, the court placed great weight on the fact that the state court judge's probable cause determination was based on the victim's testimony.  *Molnar* held that because the allegedly undisclosed exculpatory information was "simply not material to resolving the issue of *whose* statements the state court relied on to establish probable cause . . . [and because] the state court did not rely on [the officer's] testimony *to establish probable cause*," the plaintiff's claim amounted to no more than an argument that probable cause did not exist to bind him over.  *Molnar*, 359 F. App'x at 627.  Similar to the police officer's statements in *Molnar*, the statements by police officers in this case that Plaintiff contends were false and intended to "manufacture" probable cause did not form a basis of the state-court judge's probable cause finding at the preliminary examination.  The only evidence presented by either the prosecution or Plaintiff's defense attorney during the examination was the testimony of Milliner.  Moreover, Plaintiff's argument that the probable cause determination is somehow tainted because the prosecutor did not present evidence to the judge tending to discredit the sworn

testimony or Milliner is not only immaterial to "resolving the issue of whose statements the state court relied on to establish probable cause," *id.*, but it is also fundamentally a critique of Plaintiff's defense attorney's strategy, not proof that his rights guaranteed by the Fourth Amendment were violated. At the preliminary examination, Plaintiff's defense attorney had a full and fair opportunity to cross-examine the witness presented by the prosecution and to call witnesses on Plaintiff's behalf.[9] Plaintiff's assertion, made more than four years after the preliminary examination, that information existed at the time of the examination that would have altered the probable cause determination is merely an attack on the sufficiency of the state court's finding. Once the *Darrah*-like facade is peeled away from Plaintiff's malicious prosecution claim, it is exposed as simply re-litigating an issue already adjudicated in the state court.

This conclusion is further substantiated by Plaintiff's many statements in his response brief and during oral argument that do no more than challenge the sufficiency of the evidence. For example, Plaintiff argues that a search of Plaintiff's home following the shooting did not produce any evidence implicating Plaintiff in the crime and great significance should have been attached to the fact that no blood splatter was found on Plaintiff or in his home. (Pl.'s Resp. Opp'n to Def. Wayne Cnty.'s Mot. Summ. J. 7-8.)

_____

[9]Indeed, contrary to Plaintiff's contention that the state-court judge was not made aware of the circumstances surrounding Milliner's identification of Plaintiff at the crime scene, both the prosecutor and Plaintiff's defense attorney questioned Milliner regarding her initial identification of Plaintiff on the night of the shooting. (Prelim. Exam. Tr. 22:12-25, 33:11-34:14.) Furthermore, the "Request for Warrant" clearly states that "Jasmine Jordan [was] brought back to the scene for the purpose of suspect elimination, while there the witness identified him as the person with the gun." (Request for Warrant 1-2.) The record belies any suggestion that the police officers and prosecutors were attempting to conceal from the state-court judge the fact that Plaintiff was brought to the crime scene and identified by Milliner as the shooter.

After calling no witnesses at his preliminary examination, Plaintiff cannot be heard to now claim that the examining judge should have considered additional evidence in addition to the testimony of the principal eyewitness.  To allow Plaintiff to so proceed would be to permit a second bite at the apple, challenging the probable cause determination more than four years after it was made, having not challenged it at the time.  Indeed, not only was probable cause not challenged, it was affirmatively *conceded* on the record.  At the conclusion of the examination, Plaintiff's counsel specifically stated "I can argue but I don't think it would have any affect [sic].  I know you too well.  *I think that it is a question of fact.*" (Prelim. Exam. Tr. 38:8-10 (emphasis added).)  The examining judge said, "[Y]ou're right, it is a question of fact." (*Id.* at 22:11-12.)  Accordingly, Plaintiff's § 1983 malicious prosecution claim is barred by collateral estoppel.

Even were the court to assume that Plaintiff's malicious prosecution claim is not subject to the preclusive effect of collateral estoppel, Defendant Wayne County would nevertheless be entitled to summary judgment because Plaintiff has not proffered any evidence, nor even pled factual allegations in the first-amended complaint, tending to show that a policy or custom of Wayne County was the "moving force" behind his alleged malicious prosecution, a necessary requirement of a § 1983 municipal liability claim.  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010) (citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007)).  It is well settled that under § 1983 that a municipality cannot be vicariously liable for the acts of others solely based on the existence of an employer-employee relationship.  *See Los Angeles Cnty., Cal. v. Humphries*, -- U.S. --, 131 S.Ct. 447, 452 (2010).  "Instead, it is

when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To succeed on a municipal liability claim, a plaintiff " must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2006) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). Plaintiff has not even alleged that Defendant Wayne County has a policy or custom of prosecuting individuals in a manner that violates the Fourth Amendment, and therefore failed to properly plead a § 1983 claim against Defendant Wayne County.

Because the malicious prosecution claim is barred by collateral estoppel and Plaintiff does satisfactorily plead municipal liability, summary judgment will be entered in favor of Defendant Wayne County.

### C. Substantive Due Process Claim

In addition to his Fourth Amendment malicious prosecution claim, Plaintiff alleges that Defendant Wayne County is liable for the jail officials' decision to house him in the adult population of the Wayne County Jail despite being only seventeen years old at the time of his detention, a decision Plaintiff claims constitutes deliberate indifference to his "constitutional right to personal safety and protection while in confinement at its jail." (First Amend. Compl. ¶ 30.) Defendant Wayne County argues that the facts of the case do not support a finding that either it or its jail officials deprived Plaintiff of a constitutional right by placing him with adult inmates because both federal and state law

permits the housing of a seventeen-year-old inmates with adults.  (*See* Def. Wayne Cnty.'s Br. Supp. Mot. Summ. J. 9.)  In other words, Defendant Wayne County maintains that it is entitled to summary judgment because no evidence or legal authority exists that would support a finding that jail officials acted with deliberate indifference to Plaintiff's safety during his pretrial detention.

Although not apparent from the plain language of the Amendment, the due process clause of the Fourteenth Amendment operates to guarantee pretrial detainees the right to be free from deliberate indifference to physical violence caused by other inmates while in the custody of a state or its agents.  *Thompson v. Cnty. of Medina, Oh*, 29 F.3d 238, 242 (6th Cir. 1994) ("[P]retrial detainees held in the jail are protected under the Fourteenth Amendment, which provides that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979))). Such a right is analogous to a post-conviction prisoner's Eight Amendment right to be free from deliberate indifference to his safety and medical needs and is analyzed under the same conceptual rubric.  *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985) ("[T]he eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial.").

The right does not extend so far as to guarantee a detainee or prisoner the right to be free from all physical violence while in jail or prison.  Instead, "a prison official may be held liable . . . for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take

reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 834). Because Plaintiff seeks to recover under a theory of municipal liability, Plaintiff must also show that a policy or custom was the "moving force" behind any constitutional deprivation.

As an initial matter, Plaintiff argues that the court cannot grant summary judgment in favor of Defendant Wayne County on his substantive due process claim because Wayne County has not met its initial burden of demonstrating that no genuine issue of material fact exists as to whether jail officials acted with deliberate indifference. (*See* Pl.'s Resp. Opp'n to Def.'s Mot. Summ. J. 16-17.) Although short on details and analysis, Defendant Wayne County has satisfied its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton*, 369 F.3d at 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325). The court interprets Defendant Wayne County's request for summary judgment on the substantive due process claim as being based on two interrelated arguments. First, housing a seventeen-year-old inmate with adults does not constitute deliberate indifference to an individual's right to personal safety while in the custody of the state because both federal and state law permit such detention. And second, the specific facts of this case, even when construed in a light most favorable to Plaintiff, do not support a finding of deliberate indifference because Plaintiff was awaiting trial on a

serious felony charge and could therefore be housed with adult inmates.  These arguments satisfy a defendant's initial burden and places squarely in dispute whether a genuine issue of material fact exists related to Plaintiff's claim that Defendant Wayne County and its officials acted with deliberate indifference to his personal safety.  Plaintiff therefore assumes the burden of showing that a genuine issue for trial actually exists and that Defendant Wayne County is not entitled to judgment as a matter of law, a burden Plaintiff has not satisfied.

Plaintiff's deliberate indifference claim falls at the first step of the *Farmer* inquiry. Although the complaint alleges that Plaintiff was "constantly subjected to threats of physical harm by the inmates and[,] . . . was subjected to verbal abuse by unknown Defendants[,] . . . and was physically attacked by inmates on at least two occasions in February 2008," (First Amend. Compl. ¶¶ 27-28), not a scintilla of evidence exists in the record tending to show that Plaintiff either suffered mistreatment as a result of the decision to house him in the adult population or that any alleged mistreatment or harm was objectively serious.  Plaintiff has not even offered his own testimony or affidavit attesting to the veracity of the allegations in the complaint.  The lack of any evidence substantiating Plaintiff's claims of physical violence and intimidating threats while detained at the jail leads to only one conclusion: the claim is without merit.  Moreover, even if the court were to assume that the alleged incidents actually occurred and were sufficiently severe to satisfy the objective prong of the analysis, Plaintiff has provided no evidence establishing a causal link between the alleged violent altercations and the decision to house him in the adult population of the jail.  Such a failure is also fatal to Plaintiff's claim.  *See Thompson*, 29 F.3d at 242-43 (affirming the district court's grant of

summary judgement to the county defendant on a personal safety Eighth Amendment claim because "although plaintiffs have alleged instances of physical violence between inmates, plaintiffs have provided no evidence . . . that such violence is in any way related to the lack of a classification system").

Summary judgment in favor of Defendant Wayne County is also proper because Plaintiff has done no more than summarily state that his being housed in the adult population and subjected to purported physical violence and threats was caused by Defendant Wayne County's systematic failure to enforce its rules and regulations pertaining to inmate classification. (First Amend. Compl. ¶ 56.) Plaintiff's averment that jail officials violated Wayne County's Jail Operations Policy by failing to conduct a pre-classification interview within seventy-hours of his initial detention and by placing him with adult inmates despite being a minor and having no criminal record is the only allegation Plaintiff offers in support of his claim that Defendant Wayne County has "systematically" failed to enforce its jail policies. Even were these allegations true, an assumption Plaintiff argues the court must make because Defendant Wayne County never revealed the identity of the "Classification Officer" who was responsible for placing Plaintiff with the adult inmates, they do not show that a policy or custom was the moving force behind any alleged deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment. The allegations, without more, do not establish a policy or custom of lax enforcement of policies, but if credited would show only that in this instance jail officials did not properly follow the Wayne County Jail Operations Policy.

Having not shown sufficient evidence to create a triable issue that his detention in the adult population of the jail constituted deliberate indifference to his safety nor that

the housing decision was caused by a policy or custom of Wayne County, summary judgment to Defendant Wayne County is warranted.

### D. Section 1985 Claim

Plaintiff's final claim against Defendant Wayne County alleges that Wayne County, with the City of Detroit and the individual police officers named in this case, conspired to deprive Plaintiff of his constitutional rights in violation of 42 U.S.C. § 1985. Because Defendant Wayne County has moved for summary judgment only on the § 1983 claims, (*see* Def. Wayne Cnty.'s Br. Supp. Mot. Summ. J. 10), the court may not grant summary judgment on the § 1985 claim without first giving notice to the parties and a reasonable time to respond, *see* Fed. R. Civ. P. 56(f)(2). The court notes, however, that Plaintiff cannot show that Defendant Wayne County violated his constitutional rights, a necessary predicate to § 1985 conspiracy claim. *See Molnar*, 359 F. App'x at 627 (holding that a plaintiff cannot "demonstrate the existence of a conspiracy to violate his federal rights if he cannot first demonstrate an underlying deprivation of a federal right"). Nor is there any evidence that could reasonably support a finding that Defendants actively conspired to deprive Plaintiff of his constitutional rights. The court will therefore direct Plaintiff to show cause why summary judgment in favor of Defendant Wayne County should not be granted on the § 1985 claim.

### E. Claims Against John Doe Defendants

Plaintiff ostensibly asserts a malicious prosecution claim against two unknown individuals identified only as John Does I and II in the first-amended complaint. A review of the amended complaint reveals that Plaintiff has not pled any factual

allegations related to these individuals, nor has he even stated whether they are police officers, prosecutors, or some other type of state actors who may be held liable under § 1983. Aside from the amended complaint's caption, the only reference to John Does I and II is in Count I's heading, which states that the malicious prosecution claim is alleged against "unknown defendants John Doe I and John Doe II."[10] (First Amend. Compl. 7.) That Plaintiff has failed to state a claim upon which relief can be granted against these unidentified individuals is so obvious as to not require detailed analysis. Further, even if Plaintiff were to now seek leave to amend the complaint to identify the individuals and allege sufficient factual allegations to state a claim that satisfied Federal Rule of Civil Procedure 8's pleading standards, such a request would most certainly be denied given the enormous prejudice the individuals would suffer as a result of being named as defendants in this case approximately three months after discovery concluded and a mere seven weeks before the scheduled trial date. The court will therefore invoke Federal Rule of Civil Procedure 56(f)(1) and direct Plaintiff to show cause why summary judgment should not be granted on the malicious prosecution claim asserted against John Does I and II.

---

[10]Plaintiff's suggestion during oral argument that the John Doe Defendants represent the Wayne County Sheriff's Department officers who allegedly acted with deliberate indifference in placing him in the adult population of the jail is belied by his own pleadings. The deliberate indifference claim is alleged only against Wayne County; Plaintiff did not include John Does I and II in the claim. Plaintiff not realizing that the John Doe Defendants were named only in the malicious prosecution claim lends further support to the court's conclusion that the claims against these unidentified Defendants must be dismissed as lacking sufficient factual allegations and merit.

**IV. CONCLUSION**

For the reasons stated above, IT IS ORDERED:

FIRST, that Defendant Wayne County's motion to strike [Dkt. # 72] is DENIED.

SECOND, that Defendant Wayne County's motion for summary judgment [Dkt. # 68] is GRANTED.

THIRD, that Plaintiff SHOW CAUSE, in writing, on or before **July 16, 2012**, why summary judgment should not be entered on the § 1985 conspiracy claim against Defendant Wayne County and on the malicious prosecution claim against the two Defendants identified only as John Does I and II.

FOURTH, that Plaintiff's "Motion for Protective Order . . ." [Dkt. # 54] and Defendant Wayne County's "Emergency Motion for Protective Order . . ." [Dkt. # 65] are DENIED AS MOOT.

FIFTH, that Plaintiff's request for attorney's fees and costs contained in his "Motion for Protective Order . . ." [Dkt. # 54] and Defendant Wayne County's "Emergency Motion for Sanctions . . ." [Dkt. # 64] are DENIED.

FINALLY, that the deadlines contained in the Court's August 15, 2011 Scheduling Order [Dkt. # 29] are SUSPENDED pending further order of the court.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 29, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 29, 2012, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522